IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EARL FABER, #K82964, | |
| Plaintiff, | Case No. 23-cv-03628-SPM |
| v. | |
| SIDDIQUI, DOCTOR KING, DEWAYNE HILL, MOLDENHAUER, ANGELA CRAIN, KIMBERLY MARTIN, KELLY PIERCE, ROB JEFFREYS, WEXFORD HEALTH SOURCES, INC., and ADMINISTRATIVE REVIEW BOARD, | |
| Defendants. | |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Earl Faber, an inmate of the Illinois Department of Corrections (IDOC), filed this lawsuit pursuant to 42 U.S.C. § 1983 for constitutional deprivations that occurred at Menard Correctional Center. The Complaint is now before the Court for review pursuant to 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, meritless, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff alleges that adequate medical treatment for his ankle injury had been denied and delayed for over two years.

Plaintiff states that he tore a tendon in his right ankle on May 18, 2021. (Doc. 1, p. 10). He submitted a sick call request on May 21 and was seen at sick call on May 26. Plaintiff was referred to the medical doctor. (*Id.*). Plaintiff had an appointment with Dr. Siddiqui on June 8, 2021. Because there was minimal swelling, Dr. Siddiqui tried to only prescribed ibuprofen or Tylenol. (Doc. 1, p. 10). Plaintiff explained that he could not take either medicine because of stomach issues. Dr. Siddiqui offered to prescribe Neurontin. Plaintiff declined because he was already taking Neurontin for his back pain, and he believed that the medicine was not appropriate for his ankle injury. Then Dr. Siddiqui suggest naproxen. (*Id.*). Plaintiff became frustrated because he felt that Dr. Siddiqui was trying to just prescribe something, regardless of whether the medicine would in fact help the injury, so that the visit could conclude. (*Id.* at p. 11). Dr. Siddiqui informed Plaintiff that he would be ordering an x-ray. Plaintiff also disagreed with this approach and told Dr. Siddiqui that an x-ray would not show anything as there was nothing wrong with his bone. Plaintiff requested an MRI. Dr. Siddiqui denied the request and referred Plaintiff for an x-ray and for physical therapy. (*Id.*).

Plaintiff started physical therapy on July 1, 2021, and tried taking Tylenol, ibuprofen, and naproxen. (Doc. 1, p. 11). The medications "messed up [his] stomach," and he discontinued taking them. His ankle continued to cause him pain, and he submitted a sick call request on July 8, 2021. Plaintiff was seen at sick call on July 13, and he informed the nurse of his ongoing pain. (*Id.*). During his physical therapy appointment with Dawayne Hill on July 11, Hill examined Plaintiff's ankle and agreed Plaintiff did not have a bone issue, and his injury appeared to be a tendon issue. (*Id.*).

On August 23, 2021, Plaintiff saw Nurse Practitioner King. (Doc. 1, p. 11). Plaintiff told King that he needed an MRI to confirm that his tendon was injured, and she did not help him. (*Id.*). Plaintiff had an x-ray taken on August 28, and returned to sick call on August 30. He was given Tylenol, naproxen, and ibuprofen. (*Id.*).

On September 7, 2021, Plaintiff was given his x-ray results, which were normal, as everyone already knew. (Doc. 1, p. 12). On October 3, Plaintiff returned to sick call and was again referred to the doctor. Plaintiff was offered Tylenol and ibuprofen, and these medicines "only made matters worse." (*Id.*). Plaintiff's appointment with Nurse Practitioner Moldenhauer was scheduled for October 12, but was canceled prolonging Plaintiff's pain. (*Id.*). Plaintiff began walking in a manner that would prevent pressure on his right ankle, resulting in stress on his right knee. (*Id.* at p. 13). Plaintiff was housed on 10 gallery and would have to take the stairs to access and leave his cell. On one occasion, because of his irregular gate, his knee twisted and buckled injuring his knee. (*Id.*). Now Plaintiff has knee pain when doing daily activities, such as ascending the stairs, walking, and squatting. (*Id.*).

Plaintiff had an appointment with Nurse Practitioner Moldenhauer on November 16, 2021, for his ankle, knee, and a shoulder injury. (Doc. 1, p. 14). Moldenhauer referred Plaintiff to an orthopedic doctor. Plaintiff again requested an MRI, and Moldenhauer said that first ordering an MRI would only serve to delay the orthopedic appointment. A month passed, and Plaintiff did not receive any updates on his referral. He went to sick call on December 30, and the nurse informed Plaintiff that the appointment with the orthopedic doctor was still being processed for scheduling. (*Id.*).

On January 29, 2022, Plaintiff slipped and twisted his knee, further injuring his ankle. (Doc. 1, p. 14). He submitted a sick call request and was seen by Nurse Practitioner Dearmond. Plaintiff told her about his ongoing symptoms, and she referred Plaintiff for an MRI. The referral was

approved on February 14, and the MRI was conducted on April 7, 2022. On June 10, 2022, Plaintiff submitted a grievance stating that he had not received a follow-up exam or the MRI results. In response, the director of nursing, Kimberly Martin, stated that the MRI results were still waiting review by a provider, and Plaintiff would be scheduled for a medical for an appointment to discuss the results. (*Id.*).

### PRELIMINARY DISMISSALS

The Court dismisses all claims against Grievance Officer Kelly Pierce, Director Jeffreys, and the Administrative Review Board. Neither Pierce nor Jeffreys were personally involved in providing medical care to Plaintiff. An administrative official who reviews an inmate's grievances over the alleged misconduct of another person is not "personally responsible" for the complained-of conduct and does not incur liability in a civil rights case for denying the grievance. The Seventh Circuit instructs that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Furthermore, the Administrative Review Board is not "a person" subject to suit for money damages under Section 1983. *See Jordan v. Lashbrook,* No. 19-cv-00305-NJR, 2019 WL 1282327, at *3 (S.D. Ill. Mar. 20, 2019) (citations omitted).

All claims against Wexford Health Sources, Inc. (Wexford) are also dismissed. As a corporation, Wexford can only be liable for an unconstitutional policy or practice. *Shields v. Ill. Dep't of Corr*., 746 F.3d 782, 789 (7th Cir. 2014) ("Such a private corporation cannot be held liable under [Section] 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself."). Plaintiff fails to point to any such policy or practice that caused him to be denied care by medical staff at Menard.

## DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following count:

**Count 1:** Eighth Amendment deliberate indifference claim against Siddiqui, King, Hill, Moldenhauer, Crain, and Martin for delaying and/or denying Plaintiff adequate medical care for his ankle injury.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

Count 1 will proceed against Siddiqui, King, Hill, Moldenhauer, Crain, and Martin. *See Petties v. Carter,* 836 F. 3d 722 (7th Cir. 2016) (looking at the totality of "an inmate's medical care when considering whether that care evidences deliberate indifference to serious medical needs"); *Perez v. Fenoglio,* 792 F. 3d 768, 777-78 (7th Cir. 2015) ("A delay in treatment may show deliberate indifference if it exacerbated [the plaintiff's] injury or unnecessarily prolonged his pain.").

## MOTIONS TO STAY

After filing the Complaint, Plaintiff filed two motions to stay the case so that he could submit the necessary documents to proceed *in forma pauperis* (IFP) and disclose his full case history. (Doc. 3, 4). The motions are **DENIED.** Plaintiff has been granted leave to proceed IFP (Doc. 9), and Plaintiff has sufficiently disclosed his litigation history to the best of his ability. The Court finds no reason to stay this lawsuit.

For Plaintiff's records and future filings, Plaintiff's previous case numbers are as follows:

---

[1] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

*Faber v. Sgt, Rodriguez,* No. 09-cv-04855 (N.D. Ill. Sept. 3, 2009); *Faber v. Bowen* No. 09-cv-04744 (N.D. Ill. Aug. 12, 2009); *Faber v. Romero,* No. 09-04742 (N.D. Ill. Aug. 18, 2009); *Faber v. Karlos,* No. 08-cv-06492 (N.D. Ill. Dec. 14, 2008); *Henderson v. Karlos,* No. 08-cv-05966 (N.D. Ill. Nov. 4, 2008); and *Faber v. Jaburek,* No. 23-cv-07227 (N.D. Ill. Sept. 6, 2023).

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a motion seeking court recruited counsel (Doc. 2), which is **DENIED.**[2] Plaintiff discloses three unsuccessful efforts to contact attorneys and has included copies of letters declining representation. Accordingly, he appears to have made reasonable efforts to retain counsel on his own. With respect to his ability to pursue this action pro se, Plaintiff indicates that he needs the Court to recruit him counsel because (1) he is unable to afford an attorney; (2) his imprisonment will greatly limit his ability to litigate the issues in this case; (3) his education level does not exceed eighth grade; (4) he has a history of psychological issues; and (5) he has various physical impairments that make it difficult to sit for long periods of time and stare at documents, including arthritis, nerve damage, glaucoma, and visual impairment in his left eye. Nonetheless, the Court finds that Plaintiff can proceed pro se at these early stages in the case. Plaintiff appears capable of preparing coherent pleadings, meeting court-imposed deadlines, conducting initial discovery, and otherwise litigating this matter on his own. Once discovery on the merits has commenced, if Plaintiff has significant difficulty, he may refile his motion.

### DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Siddiqui, King, Hill, Moldenhauer, Crain, and Martin. All claims against Pierce, Jeffreys, Wexford Health Sources, Inc., and Administrative

---

[2] In evaluating Plaintiff's motion, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

Review Board are **DISMISSED.** The Clerk of Court is **DIRECTED** to terminate them as defendants.

Because Plaintiff's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for Siddiqui, King, Hill, Moldenhauer, Crain, and Martin the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants should respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   May 14, 2024**

                                            *s/Stephen P. McGlynn*
                                            **STEPHEN P. MCGLYNN**
                                            **United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.